**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **JAMES HARDT AND MICHELLE HARDT INDIVIDUALLY AND AS NATURAL PARENTS AND NEXT FRIENDS OF L.H., A MINOR,** | § § § |
| Plaintiffs, | § **CASE NO. 3:21-cv-00780-K** |
| | § |
| v. | § **JURY DEMAND** |
| | § |
| **THE LAMPLIGHTER SCHOOL,** | § § |
| | § |
| Defendant. | § |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**BREWER STOREFRONT, PLLC**

By: */s/ Efrain Vera*
William A. Brewer III
State Bar No. 02967035
wab@brewerattorneys.com
Efraín Vera
State Bar No. 24122707
exv@brewerattorneys.com

1717 Main Street
Suite 5900
Dallas, Texas 75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**ATTORNEYS FOR PLAINTIFFS**

## <u>TABLE OF CONTENTS</u>

I. PRELIMINARY STATEMENT ................................................................................ 1

II. RELEVANT FACTUAL BACKGROUND ............................................................. 2

   A.   Mr. and Mrs. Hardt Enroll the Child in Lamplighter and Communicate the Child's Learning Disabilities to the School. ................................................................. 2

   B.   Lamplighter Remits Positive Reports of the Child's Academic Progress. ...................... 5

   C.   Lamplighter Contrives Developmental Issues As Pretext To Deny the Child Re-Enrollment. .......................................................................................................... 7

III. APPLICABLE LEGAL STANDARD ................................................................ 10

   A.   Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6). ........................... 10

IV. ARGUMENT AND AUTHORITIES ................................................................... 11

   A.   Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated An ADA Claim Based On Lamplighter's Discrimination. ...................................................... 11

      1.   Plaintiffs have standing to pursues their ADA claim. ......................................... 13

      2.   Defendant's cases are inapposite and inapplicable. ............................................ 14

      3.   Damages available under the ADA. .................................................................... 16

   B.   Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated Their Negligence Claim. ................................................................................................ 16

      1.   Plaintiffs do not rely on its ADA allegations to support its negligence claim. ............... 16

      2.   Plaintiffs sufficiently pleaded an injury. ............................................................. 18

   C.   Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated Its Breach Of Contract Claim. ................................................................................................ 20

      1.   The Family Handbook constitutes binding legal obligations on Lamplighter. ............... 20

      2.   Plaintiffs sufficiently plead entitlement to relief. ................................................. 22

   D.   In The Alternative, The Court Should Grant Leave To Plaintiffs Amend Their Claims.. 24

V. CONCLUSION ................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arthur H. Richland Co. v. Harper*,
302 F.2d 324 (5th Cir.1962) ...................................................20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................10

*Betancourt v. Federated Dep't Stores*,
732 F. Supp. 2d 693, 707 (W.D. Tex. 2010).................................12, 15

*Croft v. Governor of Texas*,
562 F.3d 735 (5th Cir. 2009) ...................................................12

*Cuvillier v. Taylor*,
503 F.3d 397 (5th Cir. 2007) ...................................................10

*D.A. v. Houston Indep. Sch. Dist.*,
716 F. Supp. 2d 603 (S.D. Tex. 2009) ........................................17

*Doe v. Abington Friends Sch.*,
2005 WL 289929 (E.D. Pa. Feb. 4, 2005) ....................................15

*Doe v. Friends Cent. Sch. Corp.*,
No. CV 18-3473, 2019 WL 2515977 (E.D. Pa. June 18, 2019) .............20

*Fugett v. DCP Midstream, L.P.*,
No. 2:14-CV-00111-J, 2015 WL 510965 (N.D. Tex. Feb. 6, 2015).........18

*Garner v. VIST Bank*,
No. CIV.A. 12-5258, 2013 WL 6731903 (E.D. Pa. Dec. 20, 2013) .........12

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) ...................................................24

*Havlik v. Johnson & Wales Univ.*,
509 F.3d 25 (1st Cir. 2007) .....................................................21

*Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*,
2020 WL 619898 (N.D. Tex. Feb. 7, 2020).....................................22

*Hunn v. Dan Wilson Homes, Inc.*,
789 F.3d 573 (5th Cir.2015) ....................................................20

*Kallen v. J.R. Eight, Inc.*,
    775 F. Supp. 2d 1374 (S.D. Fla. 2011) ................................................................16

*Kramer v. Lakehills S., LP*,
    No. A-13-CA-591 LY, 2014 WL 51153 (W.D. Tex. Jan. 7, 2014)..........................12

*D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*,
    629 F.3d 450 (5th Cir. 2010) ..................................................................................17

*Law v. William Marsh Rice Univ.*,
    123 S.W.3d 786 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ..................21

*Leonardo Worldwide Corp. v Pegasus Sols., Inc.*,
    3:14-CV-02660, 2015 WL 13469909 (N.D. Tex Nov. 23, 2015) ...........................22

*Lowrey v. Texas A&M Univ. Sys.*,
    117 F.3d 242 (5th Cir. 1997) ..................................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................11, 12, 13, 15

*Mangla v. Brown Univ.*,
    135 F.3d 80 (1st Cir. 1998)......................................................................................21

*Northstar Bunker N.V. v. Praxis Energy Agents LLC*,
    No. 4:20-CV-01195, 2020 WL 7080576 (S.D. Tex. Dec. 3, 2020)....................19, 20

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*,
    352 Fed.Appx. 945 (5th Cir. 2009)....................................................................10, 11

*Public Citizen, Inc. v. Bomer*,
    274 F.3d 212 (5th Cir.2001) ...................................................................................13

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
    553 F.3d 869 (5th Cir. 2008) ..................................................................................10

*Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*,
    141 F.3d 524 (4th Cir. 1998) ..................................................................................17

*Sky R. v. Haddonfield Friends Sch.*,
    2016 WL 1260061 (D.N.J. Mar. 31, 2016)............................................................15

*In re So. Scrap Material Co.*,
    541 F.3d 584 (5th Cir. 2008) ..................................................................................11

*Strojnik v. Landry's Inc.*,
    No. 4:19-CV-01170, 2019 WL 7461681 (S.D. Tex. Dec. 9, 2019)....................14, 15

*Strojnik v. Landry's*,
   No. 4:19-CV-1170, 2020 WL 42454 (S.D. Tex. Jan. 2, 2020)................................................14

*Thibodeaux v. Transit Mix Concrete & Materials Co.*,
   3 F. Supp. 2d 743 (E.D. Tex. 1998).........................................................................................14

*United States v. Nobel Learning Communities, Inc.*,
   676 F Supp 2d 379 (E.D. Pa. Nov. 2, 2009)............................................................................15

*Univ. of Texas Health Sci. Ctr. at Houston v. Babb.*,
   646 S.W.2d 502 (Tex. App.--Houston [1st Dist.] 1982, no writ)............................................21

*Van Horn v. Chambers*,
   970 S.W.2d 542 (Tex. 1998)..............................................................................................16, 18

*White v. NCL Am., Inc.*,
   No. 05-22030-CIV, 2006 WL 1042548 (S.D. Fla. Mar. 8, 2006)...........................................16

*Wilson v. Cantwell*,
   No. CIV.A.3:06-CV-1913-L, 2007 WL 2285947 (N.D. Tex. Aug. 8, 2007)..........................20

*Woodruff v. A.H. Robins Co., Inc.*,
   742 F.2d 228 (5th Cir. 1984)...................................................................................................18

**Statutes**

42 U.S.C. § 12101(a)(7).....................................................................................................................12

42 U.S.C. § 12188............................................................................................................................13

42 U.S.C. § 12188(a)(2)....................................................................................................................16

42 U.S.C. § 12188(b)(2)....................................................................................................................16

Title III of the Americans with Disabilities Act ("ADA") of 1990, as amended by
the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*.............................................. *passim*

**Other Authorities**

FED. R. CIV. P. 8(a) ..........................................................................................................................20

FED. R. CIV. P. 15(a) ........................................................................................................................24

FED. R. CIV. P. 12(b)(6) ...................................................................................................................10

Plaintiffs James Hardt ("Mr. Hardt") and Michelle Hardt ("Mrs. Hardt") (together, "Mr. and Mrs. Hardt" or "Plaintiffs"), as natural parents, and next friends of their daughter, L.H., ("Child"), file this Opposition to defendant The Lamplighter School's ("Lamplighter" or "Defendant") Motion to Dismiss (the "Motion") in the above-referenced action, as follows:

## I.
## PRELIMINARY STATEMENT

In filing its motion to dismiss, Lamplighter seeks to avoid accountability towards Mr. and Mrs. Hardt, and more importantly, the Child.  Indeed, Plaintiffs last resort to redress Lamplighter's violations of the Americans with Disabilities Act[1] by failing to reasonably accommodate the Child's learning disabilities, among other issues, was to bring this action.  More specifically, Lamplighter denied the Child re-enrollment into its school after it collected tens of thousands of dollars from Mr. and Mrs. Hardt who acted in reliance on Lamplighter's undertakings and commitments.  In reality, although Lamplighter communicated to Mr. and Mrs. Hardt that the Child was academically progressing, it not only failed, during the three years that the Child attended Lamplighter, to monitor or address her academic development, it also overtly breached its contractual and common law obligations.

Indeed, Lamplighter violated its contractual obligations when it denied the Child re-enrollment in contravention of its own policies and contractual commitments.  To make matters worse, Lamplighter did so for matters having nothing to do with the best interests of the Child.  At the beginning of every school year, Mr. and Mrs. Hardt made the Child's teachers aware of her diagnosed speech articulation and receptive expressive language disorder.  Then, at the beginning of the second year, Mr. and Mrs. Hardt reported to the teachers the Child's strabismus, an eye

_____

[1] Title III of the Americans with Disabilities Act ("ADA") of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*.

misalignment, condition.  In fact, the Child's dyslexia diagnosis was known to the school in February 2020.  However, unbeknownst to the parents, Lamplighter failed to provide appropriate and effective instruction that accommodated the Child's learning disabilities.  Then, less than a week after telling Mr. and Mrs. Hardt that their Child would be offered the opportunity to re-enroll for the 2020-21 academic year, Lamplighter raised developmental issues as a pretext to refuse the Child re-enrollment.

Plaintiffs respectfully request that Defendant's Motion be denied and allow Plaintiffs to have their claims heard.  Indeed, granting Defendant's Motion will have a chilling effect on similarly situated students, and parents such as Mr. and Mrs. Hardt, who through no fault of their own, did not receive reasonable accommodations to which they were entitled and, after being denied re-enrollment, cannot bring claims to remedy the harms inflicted upon them.

## II.
## RELEVANT FACTUAL BACKGROUND

### A.    Mr. and Mrs. Hardt Enroll the Child in Lamplighter and Communicate the Child's Learning Disabilities to the School.

Mr. and Mrs. Hardt chose to send their Child to Lamplighter in reliance on the school's claim to be dedicated to "igniting the potential of each child" and engaging "children in the joy of learning through intellectual discovery in a creative, inclusive, and collaborative environment."[2] In addition, Lamplighter boasts about its Pre-K student-to-teacher ratio of 6 to 1, and a kindergarten to fourth grade student-to-teacher ratio of 9 to 1.[3]  The decision to send the Child to Lamplighter was one taken in reliance upon the specific representations and contractual commitments as the tuition for Lamplighter's Pre-K classes are approximately $14,000 per year

---

[2] *See* Plaintiffs' Original Complaint and Demand for Jury Trial (the "Complaint"), Filed April 5, 2021 at ¶ 1 (Dkt. No. 1).

[3] *Id.* at ¶ 13.

and approximately $26,000 for kindergarten.[4]   Collectively, Mr. and Mrs. Hardt spent approximately $55,876 in tuition for the Child to attend Lamplighter.[5]

At the beginning of every academic year, Mr. and Mrs. Hardt made sure to notify the Child's teachers of the Child's speech articulation and receptive expressive language disorder ("speech and language disorder").[6] First, for the 2017-18 academic year, Mr. and Mr. Hardt made Ms. Katie Nelson ("Ms. Nelson"), the Child's Pre-K3 teacher, aware of the Child's speech and language disorder.[7] Then, at the beginning of the 2018-19 year, the Child's Pre-K4 teacher, Laura Lavender ("Ms. Lavender"), was made aware by Mr. and Mrs. Hardt of the Child's speech and language disorder.[8]

In addition, in September 2018, the Child complained to Ms. Lavender that "her eyes were moving around" during a class reading session.[9] Ms. Lavender informed Mr. and Mrs. Hardt of the Child's complaints through email.[10] Mr. Hardt responded to Ms. Lavender and explained that the Child had been diagnosed with strabismus, an eye misalignment condition that results in perception, strain, and general fatigue, among other issues.[11] Further, Mr. Hardt stated that as a

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at ¶ 16, 21, 28.

[7] *Id.* at ¶ 16.

[8] *Id.* at ¶ 21.

[9] *Id.*

[10] *Id.*

[11] *Id.* at ¶ 22.

result of strabismus, the Child wears an eye patch every evening to help strengthen the muscles in her eye.[12]  Ms. Lavender failed to respond to Mr. Hardt's email.[13]

Then, at the beginning of the 2019-20 academic year, Mr. and Mrs. Hardt made the Child's kindergarten teacher, Kaitlin Ebner ("Ms. Ebner"), aware of the Child's speech and language disorder, and that the Child was taking speech therapy sessions.[14]  In fact, to further facilitate the Child's speech therapy, Mr. Hardt asked Ms. Ebner if the Child's speech therapist could work with the Child at school.[15]  Although Ms. Ebner confirmed that the Child's speech therapy sessions could take place at Lamplighter, such on-site therapy never occurred.[16]

Moreover, in February 2020, Mr. and Mrs. Hardt made Lamplighter aware that the Child was diagnosed with dyslexia.[17]  Specifically, on January 30, 2020, the Child was evaluated by Laurie Gaines-Peterson ("Ms. Gaines-Peterson"), a diagnostic specialist at Diagnostic Learning Services.[18]  After performing several tests and assessments, Ms. Gaines-Peterson's diagnostic impression of the Child was: DSM-V-315.00 – Specific Learning Disorder, Reading, Dyslexia. DSM-V-315.00 is alternatively known as dyslexia and involves impairment in reading and includes possible deficits in word reading accuracy, reading rate or fluency, or reading comprehension.[19]

---

[12] *Id.*

[13] *Id.* at ¶ 23.

[14] *Id.* at ¶ 28.

[15] *Id.*

[16] *Id.*

[17] *Id.* at ¶ 54.

[18] *Id.* at ¶ 48.

[19] *Id.*

On March 3, 2020, Dr. Eleanor Munson ("Dr. Munson") reviewed Ms. Gaines-Peterson's report and confirmed that Ms. Gaines-Peterson did an excellent job.[20]  On March 6, 2020, Mr. and Mrs. Hardt discussed with Dr. Hill their communications with Dr. Munson who stated that dyslexia can be remediated, and also specifically recommended that the Child take part in the Scottish Rite Take-Flight Reading Program – the same program employed by Lamplighter to assist students such as the Child.[21]

**B.**     <u>**Lamplighter Remits Positive Reports of the Child's Academic Progress.**</u>

Although the Child's Pre-K3, K4, and kindergarten teachers were aware of the Child's speech and language disabilities, the Child's strabismus condition, and dyslexia, no Lamplighter administrator or staff mentioned the need for any supplemental instruction.[22]  Further, no additional instruction was given by Lamplighter – despite Lamplighter having a contract with a speech-therapy company and employing a reading specialist.[23]  Nevertheless, during the three years that the Child was at Lamplighter, the Child received satisfactory progress reports.[24]  Given these reports, Mr. and Mrs. Hardt had no reason to believe that the Child was not making notable progress in both her learning and development.[25]

As referenced above, when Mr. and Mrs. Hardt informed Ms. Lavender about the Child's strabismus in September 2018, Ms. Lavender failed to respond to Mr. Hardt's email.[26]  Nor did

---

[20] *Id.* at ¶ 60.

[21] *Id.* at ¶ 60, 63.

[22] *Id.* at ¶ 17, 21, 30.

[23] *Id.* at ¶ 29, 30.

[24] *Id.* at ¶ 17, 21, 33.

[25] *Id.* at ¶ 19, 25, 26.

[26] *Id.* at ¶ 23.

Ms. Lavender raise or review the issues again.[27]   Lamplighter did not propose or make modifications to accommodate the Child's vision disability and its effect on her reading ability, performance assessments, and future learning.[28]  Instead, Ms. Lavender reported to Mr. and Mrs. Hardt that the Child paid attention well, finished her tasks, was happy when she was at school, and got along fine with the other children.[29]

Moreover, at the beginning of the 2019-20 academic year, Mr. and Mrs. Hardt asked Ms. Ebner if the Child's speech therapist could work with the Child at school to further facilitate the Child's speech therapy.[30]  Ms. Ebner confirmed to Mr. and Mrs. Hardt that the Child's speech therapy sessions could take place at Lamplighter.[31]  Therefore, based on Ms. Ebner's assurances, Mr. Hardt informed the Child's speech therapist that she could work with the Child at the school.[32] The speech therapist then called Lamplighter to schedule a visit to the campus to provide speech therapy to the Child.[33]  However, the speech therapist was informed that she was not allowed on campus because Lamplighter had a contract with a different speech-therapy company.[34]  Although Mr. Hardt was bemused, as he was previously assured that it was possible for the speech therapist to visit the school, Mr. Hardt continued speech therapy sessions for the Child outside of school.[35] Nonetheless, despite the three straight years of Lamplighter being made aware of the Child's

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at ¶ 24.

[30] *Id.* at ¶ 28.

[31] *Id.*

[32] *Id.* at ¶ 29.

[33] *Id.*

[34] *Id.*

[35] *Id.*

speech articulation and receptive expressive language disorder, Mr. and Mr. Hardt were never made aware of Lamplighter's in-house speech therapy services, nor was the Child offered access to such supposed services.[36]

Moreover, in September 2019, after a reading-readiness screener was performed on the Child, Lamplighter's reading and language specialist, Ms. June Landry ("Ms. Landry") stated that she would partner with Ms. Ebner to assist the Child with reading development.[37]  However, ultimately, neither Ms. Landry nor Ms. Ebner worked with the Child on her development of letters and sounds.[38]  This was kept from Mr. and Mrs. Hardt, as they would only learn four months later that neither Ms. Landry nor Ms. Ebner worked with the Child.[39]

## C.   Lamplighter Contrives Developmental Issues As Pretext To Deny the Child Re-Enrollment.

Despite the Child's satisfactory progress reports, Mr. and Mrs. Hardt were taken aback when in March 2020, Lamplighter denied the Child re-enrollment because the Child was purportedly too far behind academically.[40]  As Mr. and Mrs. Hardt would come to learn, Lamplighter raised the, what it dubbed, "developmental" issues as a pretext to eventually refuse the Child re-enrollment.[41]

In December 13, 2019, Ms. Jill Schroeter ("Ms. Schroeter") informed Mr. and Mrs. Hardt that she administered the Gesell test, intended to determine a child's collective behavior and

---

[36] *Id.* at ¶ 30.

[37] *Id.* at ¶ 31.

[38] *Id.* at ¶ 32.

[39] *Id.*

[40] *Id.* at ¶ 67.

[41] *Id.* at ¶ 41, 81.

performance on a developmental scale.[42]  Mr. and Mrs. Hardt were not notified beforehand that the Gesell test would be administered to the Child.[43]  Unfortunately, Ms. Schroeter waited more than a month and did not deliver the results to Mr. and Mrs. Hardt until the meeting with other Lamplighter administrators and teachers on January 15, 2020.[44]

As a result of Ms. Schroeter's findings, Ms. Judith Mullens ("Ms. Mullens"), Lamplighter's assistant head of teaching and learning early childhood, recommended to Mr. and Mrs. Hardt that they have an external evaluation performed on the Child's learning style.[45]  Ms. Mullens commented that based on the results from the external learning review, they would determine whether the Child was a good candidate for the transitional first ("T1") program.[46]  Ms. Mullens said that if there was a learning disability, that Lamplighter would **support** the Child along the way.[47]  In order to foster support from Lamplighter for the Child, and believing such review would be relied on to enroll the Child in the T1 Program, Mr. and Mrs. Hardt agreed, and had the Child examined by Ms. Gaines-Peterson.[48]

Mr. and Mrs. Hardt submitted Ms. Gaines-Peterson's diagnostic exam report to Lamplighter on February 19, 2020.[49]  However, instead of support, Ms. Schroeter instructed Ms. Landry to remove the Child from class and conduct additional evaluations on the Child.  Ms.

---

[42] *Id.* at ¶ 43.

[43] *Id.*

[44] *Id.*

[45] *Id.* at ¶ 46.

[46] *Id.*

[47] *Id.*

[48] *Id.* at ¶ 47.

[49] *Id.* at ¶ 54.

Landry's test results evaluated the Child to purportedly now have a "fragile" reading profile.[50] However, instead of using the results from Ms. Landry's test to determine what accommodations the Child would receive, the reading deficiencies that Ms. Landry identified were used in contrived arguments by Ms. Schroeter and the rest of the administrators to justify why the Child should no longer be allowed to attend Lamplighter.[51]

During a meeting on March 10, 2020, Dr. Hill commented that she received a progress report on the Child's academic development progress that was prepared by Ms. Schroeter that discussed the Child's schoolwork under Ms. Ebner's instruction.[52]  Dr. Hill decided that, based on the information in the report, the Child was too far behind academically and should, therefore, not attend Lamplighter for the 2020-21 school year.[53]  However, Ms. Ebner displayed intransigence to reasonable requests to work with the Child on her incomplete work.[54]  For example, when Ms. Ebner stated that that the Child had difficulty completing her work on time, Mr. Hardt asked that the incomplete work be sent home with the Child so that all assignments could be completed.[55] Without any reason or explanation, Ms. Ebner dismissively replied, "No."[56]

Instead, as a last-minute means to justify denying the Child re-enrollment, Dr. Hill relied on inaccurate and illegitimate evaluations that did not consider the Child's learning disabilities.[57]

---

[50] *Id.*

[51] *Id.*

[52] *Id.* at ¶ 67.

[53] *Id.*

[54] *Id.* at ¶ 34.

[55] *Id.*

[56] *Id.*

[57] *Id.* at ¶ 69.

In fact, none of the assessments made by Lamplighter provided any accommodations that a school is obliged to provide when evaluating disabled students.[58]

### III.

### APPLICABLE LEGAL STANDARD

#### A.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure ("Rule" or "FED. R. CIV. P.") 12(b)(6) motions are "viewed with disfavor and are rarely granted."[59]  To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but instead, need only allege facts that, when assumed to be true, "raise a right to relief above the speculative level."[60]  Moreover, the complaint must be construed liberally and in favor of plaintiffs,[61] taking all well-pleaded allegations as true, and granting plaintiffs all reasonable inferences in support of their claims.[62]  A plaintiff must plead only enough facts "to state a claim to relief that is plausible on its face."[63]  In order for a claim to be plausible at the pleading stage, "the complaint need not strike the reviewing court as probably meritorious, but it must raise more than a sheer possibility that the defendant has violated the law

---

[58] *Id.*

[59] *See, e.g., Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

[60] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

[61] *See United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 872 (5th Cir. 2008) ("the allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true") (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006).

[62] *See Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 Fed.Appx. 945, 950 (5th Cir. 2009) ("We accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff").

[63] *Twombly*, 550 U.S. at 570.

as alleged."[64]  The standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements."[65]

## IV.

## ARGUMENT AND AUTHORITIES

In the Motion, Defendant asserts that Plaintiffs' claims should be dismissed based on the following arguments: (i) Plaintiffs lack standing to bring the ADA claim as Plaintiffs did not establish real or immediate threat of imminent injury that is capable of being redressed; (ii) Plaintiffs allegations are insufficient to form the basis of a negligence claim and Plaintiffs did not establish an injury; and (iii) the Family Handbook did not create a binding obligation and Plaintiffs did not establish an injury.  Each of those assertions is without merit.

First, Plaintiffs have standing to bring the ADA claim and established a real injury that is capable of being redressed.  Second, Plaintiffs' negligence allegations are separate and apart from the ADA claim and Plaintiffs have pleaded a sufficient injury.  Third, the Family Handbook creates a binding obligation and Plaintiffs have pleaded a sufficient injury.

**A.     Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated An ADA Claim Based On Lamplighter's Discrimination.**

"[T]he irreducible constitutional minimum of standing contains three elements."[66]  These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the

---

[64] *Oceanic Exploration Co.*, 352 Fed.Appx. at 950 (citations omitted).

[65] *In re So. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

[66] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

likelihood that a favorable decision will redress the injury."[67] Particularized means "that the injury must affect the plaintiff in a personal and individual way."[68] "The party invoking federal jurisdiction bears the burden of establishing these elements."[69]

A plaintiff may show an injury to support injunctive relief by the deterrent effect test.[70] "Under the deterrent effect test, a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers."[71] "To satisfy this test, a plaintiff must show that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not for the barriers."[72]

---

[67] *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61).

[68] *Lujan*, 504 U.S. at 560 n.1.

[69] *Id.* at 561.

[70] *See Kramer v. Lakehills S., LP*, No. A-13-CA-591 LY, 2014 WL 51153, at *4 (W.D. Tex. Jan. 7, 2014) ("Numerous courts have rejected the 'intent to return' theory, and instead have relied on the 'deterrent effect' doctrine in determining whether a Title III plaintiff has established standing"); *Garner v. VIST Bank*, No. CIV.A. 12-5258, 2013 WL 6731903, at *5 (E.D. Pa. Dec. 20, 2013) (citing *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005)). Relevantly, the court in *Betancourt v. Federated Dep't Stores*, stated that, in the case of architectural barriers, a plaintiff's plan to return to the establishment is "only one type of injury" contemplated by the ADA as "the ADA expressly contemplates loss of opportunity as an actionable injury." 732 F. Supp. 2d 693, 707 (W.D. Tex. 2010); *id.* ("Thus, any disabled plaintiff who alleges that she is being denied the opportunity to visit or is currently being deterred from visiting a public accommodation that is violating Title III alleges sufficient present injury in fact for prospective equitable relief."). *See also* 42 U.S.C. § 12101(a)(7) ("the Nation's proper goals regarding individuals with disabilities are to assure equality of *opportunity*, full participation, independent living and economic self-sufficiency for such individuals") (emphasis added).

[71] *Garner*, 2013 WL 6731903, at *5 ("In addition, Title III explicitly does not require 'a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply [with Title III of the ADA].'") (citing *Betancourt*, 732 F.Supp.2d at 708–09).

[72] *Id.* ("The deterrent effect method . . . . is consistent with the language of the ADA and with Supreme Court precedent. For instance, the ADA expressly contemplates loss of opportunity as an actionable injury. In addition, Title III explicitly does not require a person with a disability

Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.[73]  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."[74]

### 1.      Plaintiffs have standing to pursues their ADA claim.

Plaintiffs have established standing pursuant to the ADA.  In particular, Plaintiffs have alleged: (i) an injury in fact that is actual or imminent, (ii) a causal connection between the injury and the conduct complained of, and (iii) the likelihood that a favorable decision will redress the injury.

First, an injury in fact that is actual or imminent exists pursuant to the "deterrent effect" method.  In particular, Plaintiffs have actual knowledge of barriers preventing equal access, were deterred from patronizing the public accommodation because of those accessibility barriers, and there is a reasonable likelihood that Plaintiffs would use the facility if not for the barriers.  Indeed, Mr. and Mrs. Hardt were deterred from patronizing Lamplighter after it refused to reasonably accommodate the Child's learning disabilities.  There is a reasonable likelihood that Mr. and Mrs. Hardt would have continued to patronize the school were it not for Lamplighter's refusal to provide reasonable accommodations whether by continuing to enroll the Child.

---

to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply with Title III of the ADA.") (internal citations and quotations omitted).  *See also* 42 U.S.C. § 12188 ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions").

[73] *See Lujan*, 504 U.S. at 561.

[74] *Id.*; *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir.2001).

Second, the injury complained of by Plaintiffs is directly related to Defendant Lamplighter's conduct. In particular, Lamplighter refused to provide reasonable accommodations for the Child's learning disabilities. Plaintiffs' allegations arise from Lamplighter's actions.

Next, Plaintiffs have shown the likelihood that a favorable decision will redress Plaintiffs' injuries. Indeed, it is reasonably likely that Mr. and Mrs. Hardt would continue to patronize Lamplighter absent its refusal to provide reasonable accommodations.

## 2. **Defendant's cases are inapposite and inapplicable.**

Defendant erroneously contends that Plaintiffs do not have standing to bring the ADA claim because Plaintiffs do not intend to re-enroll the Child in Lamplighter. This argument ignores the simple fact that Lamplighter denied Mr. and Mrs. Hardt the ability to re-enroll the Child at Lamplighter. Given the facts, Defendant's authorities are inapposite.[75]

For example, Defendant cites to *Strojnik v. Teof Hotel GP, LLC*, for the proposition that Plaintiffs cannot establish a real and immediate threat of imminent injury, or that any claimed injury would not be redressed by a favorable decision.[76] That case concerned a plaintiff, Strojnik, that never visited the defendant's premises and alleged that he "intended" to visit but whose

---

[75] Defendant also argues that Plaintiffs' ADA claim must be dismissed to the extent that the violations occurred more than two years before the filing of the Complaint. Plaintiffs disagree as "The Fifth Circuit has adopted a discovery rule for determining when the a party's cause of action under the ADA accrues." *Thibodeaux v. Transit Mix Concrete & Materials Co.*, 3 F. Supp. 2d 743, 745 (E.D. Tex. 1998) (citing *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 589 (5th Cir.1995)).

[76] No. 3:19-CV-01336-E, 2020 WL 5211063, at *1 (N.D. Tex. Aug. 31, 2020). Defendant also cites to *Strojnik v. Landry's Inc.*, No. 4:19-CV-01170, 2019 WL 7461681, at *1 (S.D. Tex. Dec. 9, 2019), report and recommendation adopted sub nom. *Strojnik v. Landry's*, No. 4:19-CV-1170, 2020 WL 42454 (S.D. Tex. Jan. 2, 2020) ("Strojnik II"). *Stronjik II* is factually similar to *Strojnik*.

website were deficient in identifying, in part, room accessibility.[77]   In contract, Mr. and Mrs.

Hardt's action is one in which their daughter attended Lamplighter for three years and paid over

$55,000 in tuition for the Child to attend Lamplighter.[78]  Moreover, the court in *Stronjik* analyzed

plaintiff's claims under the "intent to return" standard rather than the "deterrent effect" method

described above.[79]  As such, *Strojnik* and *Stronjik II* are inapplicable here.

In addition, contrary to Defendant's assertions, courts routinely find that standing exists in

cases in which students with disabilities suffered discrimination at private schools, left their

schools before bringing suit for injunctive relief under Title III of the ADA, and never returned.

The claims in those cases were adjudicated on the merits until the parties reached out-of-court

settlements, without any question that the requisite federal jurisdiction was lacking.[80]  Indeed,

granting Defendant's Motion will have a chilling effect on students such as the Child, and parents

---

[77] *Id.* at *1.  Notably, court stated that plaintiff Strojnik was a disbarred attorney who filed "thousands of lawsuits against small businesses alleging minor violations of the Americans with Disabilities Act . . . ."  *Id.*

[78] *Cf. Betancourt*, 732 F. Supp. 2d at 709 ("The Court found that such conditional statements—that plaintiffs would use the river if the defendant were not discharging pollutants into it—could not be equated with the speculative 'some day' intentions to visit endangered species halfway around the world that was held insufficient in *Lujan*.").

[79] Defendants also cite to *Deutsch v. Annis Enterprises, Inc.*, for the proposition that Plaintiffs cannot establish a real and immediate threat of imminent injury that would be redressed by a favorable court decision.  882 F.3d 169 (5th Cir. 2018).  Defendants use of *Deutch* fails for the same reasons as *Stronjik* and *Stronjik II*.  Namely, *Deutch* used the "future-injury" standing method which is inapplicable here.  Moreover, unlike this case, the plaintiff in *Deutch* visited defendant's establishment only once and, like *Stonjik*, "filed nearly 400 lawsuits in just over 300 days . . . ."  *Id.*

[80] *See United States v. Nobel Learning Communities, Inc.*, 676 F Supp 2d 379, 380 (E.D. Pa.  Nov. 2, 2009) (finding that defendant discriminated against children with disabilities who were denied enrollment to its school);  *Doe v. Abington Friends Sch.*, 2005 WL 289929 (E.D. Pa. Feb. 4, 2005) (granting premature summary judgment based on incomplete discovery record), 480 F.3d 252 (3d Cir. 2007) (reversing and remanding with instruction to permit sufficient discovery), 2007 WL 1489498 (E.D. Pa. May 15, 2007) (ordering discovery after remand); *Sky R. v. Haddonfield Friends Sch.*, 2016 WL 1260061 (D.N.J. Mar. 31, 2016).

such as Mr. and Mrs. Hardt, who through no fault of their own, did not receive reasonable accommodations to which they were entitled and, after being denied re-enrollment, cannot bring claims to remedy the harms inflicted upon them.

### 3. Damages available under the ADA.

Defendant argues that the ADA claim must be dismissed because damages are not available under suits for violations of Title III of the ADA. Defendant's assertion that the entire ADA claim should be dismissed is erroneous as Plaintiffs concede that remedies in private ADA actions are limited to injunctive relief—which Plaintiffs seek.[81] Nonetheless, in actions under the ADA, Plaintiffs remain entitled to their attorneys' fees.[82]

## B. Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated Their Negligence Claim.

Under Texas law, a negligence claim "has three elements: 1) a legal duty; 2) breach of that duty; and 3) damages proximately resulting from the breach."[83]

### 1. Plaintiffs do not rely on its ADA allegations to support their negligence claim.

Defendant argues that claim for negligence cannot be brought to remedy purported ADA violations. Even if true, Plaintiffs' allegations that support its claim of Lamplighter's ADA violations constitute only a portion of Plaintiffs' allegations that support its claim of Lamplighter's negligence.[84] Moreover, although Defendant incorrectly argues that its allegations are inconsistent

---

[81] *See* 42 U.S.C. § 12188(a)(2). Moreover, a court may assess civil penalties when requested by the Attorney General. *See* 42 U.S.C. § 12188(b)(2).

[82] *See e.g.*, *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374 (S.D. Fla. 2011).

[83] *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

[84] *See White v. NCL Am., Inc.*, No. 05-22030-CIV, 2006 WL 1042548, at *6 (S.D. Fla. Mar. 8, 2006) ("Plaintiff may not use the ADA's standards alone to impose a duty on the Defendants. This is not to say that a disabled person can never bring a common law action arising from injuries caused by negligent conduct in the context of public accommodation. Rather, to do

for a negligence claim, courts have stated that a school's failure to recognize and assess a student's learning disabilities presents a claim for negligence.[85]   In fact, Plaintiffs sufficiently plead that Defendant had a duty to the Child and breached that duty, by the following:

- Mr. and Mrs. Hardt discover[ed] that Lamplighter's handling of the Child fell significantly below its required duty of care and promised standard of education. Worse, school staff maintained a stunning indifference to the best interests of the Child. In particular, Lamplighter refused to collaborate with Mr. and Mrs. Hardt and did not accommodate the Child with appropriate classroom instruction to meet her needs during her three years at Lamplighter.[86]

- [It] was the third straight year that Lamplighter was made aware of the Child's speech articulation and receptive expressive language disorder. Nonetheless, despite Lamplighter's awareness of the Child's speech therapy needs, Mr. and Mr. Hardt were never made aware of Lamplighter's in-house speech therapy services, nor was the Child offered access to such supposed services.[87]

- [N]either Ms. Landry nor Ms. Ebner worked with the Child on her development of letters and sounds. This was kept from Mr. and Mrs. Hardt, as they would only learn four months later that neither Ms. Landry nor Ms. Ebner worked with the Child. In fact, later in the year, the Child communicated to Mr. and Mrs. Hardt that when she would raise her hand for assistance, Ms. Ebner avoided her. Mr. and Mrs. Hardt had to resort to telling the Child to request assistance from Ms. Ebner's teaching assistant. Lamplighter knew of the Child's struggles and again failed to make modifications to accommodate the Child's disabilities.[88]

---

so a plaintiff must identify a recognized duty at common law, independent of the ADA standards.").

[85] *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) ("In their complaint, the [plaintiffs] contend only that [the son's] test scores from as early as fourth grade 'should have alerted' the defendants of his disability and the need to provide him a free appropriate public education. The complaint therefore presents, at best, a negligence claim— that the defendants should have recognized [the son's] disability."). *See also D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 620 (S.D. Tex. 2009), aff'd sub nom. *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010) (citing to *Sellers by Sellers*, 141 F.3d at 528-29).

[86] Complaint at ¶ 14.

[87] *Id.* at ¶ 30.

[88] *Id.* at ¶ 32.

17

- [I]n contravention to Lamplighter policies, Ms. Ebner disciplined the Child by singling her out in front of the other students for innocuous behavior and did not allow the Child to participate in class events. This created a hostile learning environment that exacerbated problems and made it difficult for the Child to receive the assistance she needed to effectively address her learning disabilities.[89]

As such, Plaintiffs sufficiently plead its negligence claim.[90]

### 2.   <u>Plaintiffs sufficiently pleaded an injury.</u>

While a claim in negligence in Texas has three elements, Defendant only contends that Plaintiffs failed to demonstrate an injury, or damages that proximately resulted from the breach.[91] In Texas, "To show entitlement to damages for negligence, a plaintiff must plead either a personal injury or property damages resulting from the defendant's conduct."[92]  Plaintiffs have alleged a personal injury resulting from Defendant's conduct.  Namely, Plaintiffs allege the following:

- Appallingly, despite being aware of the Child's disabilities, Lamplighter disregarded its published policies prohibiting disability-based discrimination in school programs and activities. As a result, the Child lost critical learning time because Lamplighter failed in the school's obligation to recognize and acknowledge the developmental disabilities and reasonably accommodate the Child. Instead, Lamplighter simply continued to move the Child along while disregarding their obligation to address the Child's unique learning needs, even as it continued to collect tens of thousands of dollars in annual tuition paid by Plaintiffs.[93]

- After three years at the school, Mr. and Mrs. Hardt discovered that Lamplighter lied to them. For the time that the Child attended Lamplighter, the teachers and

---

[89] *Id.* at ¶ 36.

[90] Defendant also argues that Plaintiffs' negligence claim must be dismissed to the extent that the violations occurred more than two years before the filing of the Complaint.  Plaintiffs disagree as the Fifth Circuit has stated that negligent causes of action do "not accrue until the plaintiff learns or reasonably should have learned of the negligent cause[.]"  *Woodruff v. A.H. Robins Co., Inc.*, 742 F.2d 228, 230 (5th Cir. 1984); *Winters v. Diamond Shamrock Chem. Co.*, 941 F. Supp. 617, 621 (E.D. Tex. 1996), aff'd, 149 F.3d 387 (5th Cir. 1998).

[91] *See Van Horn*, 970 S.W.2d at 544.

[92] *Fugett v. DCP Midstream, L.P.*, No. 2:14-CV-00111-J, 2015 WL 510965, at *4 (N.D. Tex. Feb. 6, 2015).

[93] Complaint at ¶ 5.

administrators disregarded all the signs of the Child's learning disabilities and allowed her to struggle alone through the most crucial years of her early childhood, all the while representing to Mr. and Mrs. Hardt that the Child was academically progressing.[94]

- As a result of Lamplighter's direct and proximate negligence, the Child has been harmed and damaged such that the Child's developmental progress has been delayed. The Child was denied access to a transitional education program not available to the Child elsewhere.[95]

Indeed, had it not been for Lamplighter's failure to accurately recognize or acknowledge the Child's learning disabilities, or remit inaccurate progress reports, the Child would have had the opportunity to remedy the issues that Lamplighter used as a pretext to deny the Child re-enrollment. As such, the Child's developmental progress would not have been delayed and, in fact, would have had the opportunity to benefit from Lamplighter's transition educational program (recommended by two outside and independent evaluators) that is not available elsewhere. Therefore, Plaintiffs have sufficiently pleaded an injury.[96]

---

[94] *Id.* at ¶ 72.

[95] *Id.* at ¶ 89.

[96] *See Northstar Bunker N.V. v. Praxis Energy Agents LLC*, No. 4:20-CV-01195, 2020 WL 7080576, at *1 (S.D. Tex. Dec. 3, 2020) (denying motion to dismiss even though "complaint fails to plead any actual damages that it suffered as a result of negligence"). Defendant cites to multiple cases for the proposition that Plaintiffs fail to demonstrate an injury. All three authorities fail in this instance. First, *Pemberton v. PNC Bank Nat. Ass'n*, is inapposite because it is a case concerning an attempted mortgage foreclosure in which the plaintiffs failed to respond to the motion to dismiss. No. CIV.A. H-12-756, 2012 WL 2122201 (S.D. Tex. June 11, 2012). The court in *Pemberton* stated that plaintiffs' allegations of communications with defendants failed to support an inference that defendant owed plaintiff a duty. *Pemberton* fails here because Defendant does not challenge that Defendant's owed a duty, only that Plaintiffs failed to sufficiently plead an injury (which it did). Second, *Xiumin Li v. Genentech, Inc.*, is inapposite because the plaintiff in that action a past employee of defendant, brought the negligence claim related to allegations after the plaintiff was terminated. No. 3:17-cv-712, 2017 WL 6886720 (N.D. Tex. Dec. 20, 2017), adopted, 2018 WL 369157 (N.D. Tex. Jan. 10, 2018) (Boyle, J.). Here, Plaintiffs' negligence claim directly relates to Lamplighter's actions during the time that the Child was enrolled at Lamplighter. As such, *Xiumin Li* is inapplicable. Third, *DirecTV, Inc. v. Nguyen* is inapplicable because the court found that the defendants there pled "no facts" regarding its negligence claim. No. CV H-03-1757, 2003 WL 27381297 (S.D. Tex. Oct. 28, 2003). *DirecTV* is inapposite because Plaintiffs have pled more than enough facts to support its negligence claim. Furthermore, and

**C.      Defendant's Motion Should Be Denied Because Plaintiffs Sufficiently Stated Its Breach Of Contract Claim.**

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."[97]  Here, Defendant only challenges that Plaintiffs did not sufficiently plead damages resulting from the breach of contract.  However, a valid contract complaint can be a brief one as these elements do not have to be pled in detail.[98]  A complaint should simply describe the alleged terms of the contract in a sufficiently specific manner to give the defendant notice of the nature of the claim.[99]

**1.      The Family Handbook constitutes binding legal obligations on Lamplighter.**

Defendant argues that Lamplighter's Family Handbook does not give rise to binding legal obligations on Lamplighter but fails to cite any applicable authority to support this assertion.  Defendant further argues that the Enrollment Agreement constitutes the entire agreement.  The Enrollment Agreement, however, specifically refers to and, as such, incorporates the Family Handbook, which contains the February 1st deadline requirement.  Indeed, courts have routinely found that student handbooks create binding obligations.[100]

---

importantly, the court in *DirectTV* also states that "Defendants do not have to prove that they suffered an injury at the motion to dismiss stage, but they do have to allege facts supporting an actual injury at that time."  *Id.* at 2 n.6.

[97] *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir.2015) (citing *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex.App.—El Paso 2009, no pet.)), cert. denied, —— U.S. ——, 136 S.Ct. 592, 193 L.Ed.2d 470 (2015).

[98] *See* FED. R. CIV. P. 8(a); *Arthur H. Richland Co. v. Harper*, 302 F.2d 324, 325-26 (5th Cir.1962).

[99] *See Wilson v. Cantwell*, No. CIV.A.3:06-CV-1913-L, 2007 WL 2285947, at *3 (N.D. Tex. Aug. 8, 2007) (citing *American Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F.Supp.2d 744, 753 (N.D. Tex. March 30, 2005)).

[100] *See Doe v. Friends Cent. Sch. Corp.*, No. CV 18-3473, 2019 WL 2515977, at *9 (E.D. Pa. June 18, 2019) ("The contract between an educational institution and a student includes any

Further, courts have recognized that handbooks constitute contracts between a student and the educational institution.[101]  Although courts hold that no enforceable contract exists "where there is an express disclaimer negating any intent by the school to be bound by the terms of its catalog or handbook,"[102] no such reservation is made in the Family Handbook with respect to the February 1st deadline.  Rather, the Family Handbook only makes references to reservations with respect to its purported ability to "request the withdrawal of any student whose needs cannot be met" and regarding reserving "the right to determine school closure during inclement weather."[103]

Even if the Court agrees that the Enrollment Agreement constitutes the entire agreement, Defendant's remain in breach of that agreement as well.  In particular, the Enrollment Agreement states: "Parent(s)/Guardian(s) agree(s) that in the event of any failure or delay of the [Lamplighter's] performance this Agreement resulting **from causes beyond [Lamplighter's] reasonable control**, the tuition obligations under this Agreement shall continue and [Lamplighter] shall not be liable for any such failure or delay in [Lamplighter's] performance."[104]  As Plaintiffs' allegations detail actions which were not reasonably beyond Lamplighter's control, Lamplighter's

---

agreement between the parties . . . contained within a portion of the student handbook.") (internal quotations omitted) (citing *Doe v. Univ. of Sciences*, Civ. A. No. 19-358, 2019 WL 632022, at *6 (E.D. Pa. Feb. 14, 2019)).  *See also Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34 (1st Cir. 2007) ("A student's relationship to [their] [school] is based in contract."); *Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) ("The student-college relationship is essentially contractual in nature. The terms of the contract may include statements provided in student manuals and registration materials.") (citations omitted).

[101] *See Univ. of Texas Health Sci. Ctr. at Houston v. Babb.*, 646 S.W.2d 502, 506 (Tex. App.--Houston [1st Dist.] 1982, no writ) ("We hold that a school's catalog constitutes a written contract between the educational institution and the patron, where entrance is had under its terms.").

[102] *Law v. William Marsh Rice Univ.*, 123 S.W.3d 786, 793 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[103] Complaint, Ex. 1 at 34, 35.

[104] Motion at 9, Ex. A. (emphasis added).

failures to adhere to its agreement with Mr. and Mrs. Hardt establish that Plaintiffs have pleaded sufficient facts to show an injury for breach of contract.

### 2.   Plaintiffs sufficiently plead entitlement to relief.

Defendant erroneously argues that Plaintiffs' allegations are insufficient to demonstrate a plausible entitlement to relief.[105]   "In pleading damages, a plaintiff need not allege an exact number. Rather, the plaintiff must allege a plausible, non-speculative claim for damages."[106]

Plaintiffs allegations concerning its damages are sufficient at the pleading stage to state legally viable claims and withstand a motion to dismiss.  Indeed, based on communications with Ms. Mullens on January 15, 2020, Mr. and Mrs. Hardt had the Child examined, at their own expense, by Ms. Gaines-Peterson on January 30, 2020 (just two days before the February 1st deadline).  Based on the communications with Lamplighter, Mr. and Mrs. Hardt continued with independent examinations and evaluations, at their own expense.  Not only did Mr. and Mrs. Hardt

---

[105] Defendant cites to *Snowden v. Wells Fargo Bank, N.A.* for the proposition that generic assertions do not demonstrate an entitlement to relief. No. 3:18-cv-1797, 2019 WL 587304 (N.D. Tex. Jan. 18, 2019), adopted, 2019 WL 586005 (N.D. Tex. Feb. 12, 2019) (Kinkeade, J.).  *Snowden* is inapplicable here because plaintiffs in *Snowden* alleged that they incurred damages because their use of the property in question was "jeopardized" rather than actually suffering damages. That differs substantially from this case as, unlike *Snowden*, Mr. and Mrs. Hardt have sufficiently alleged a plausible claim for damages that resulted from Lamplighter's failure to notify Mr. and Mrs. Hardt more than a month after it was contractually obligated to. Similarly, Defendant cite to *Jobe v. JPMorgan Chase Bank, Nat'l Ass'n* for the proposition that generic assertions do not demonstrate an entitlement to relief. No. 3:20-CV-588, 2020 WL 5984369 (N.D. Tex. Sept. 18, 2020), adopted, 2020 WL 5981999 (N.D. Tex. Oct. 7, 2020) (Kinkeade, J.).  *Jobe* is similarly inapposite because while the case concerned the potential foreclosure of a home, the court found that, at most, it could only infer that there was a threat of foreclosure.  Here, Mr. and Mrs. Hardt do not allege a potential of damages but have alleged a plausible claim for damages based on Lamplighter's breach of contract.

[106] *Hong Kong Aroma Star Int'l LLC v. Elta MD Inc.*, 2020 WL 619898, at *3 (N.D. Tex. Feb. 7, 2020) (citation and quotation marks omitted); *Leonardo Worldwide Corp. v Pegasus Sols., Inc.*, 3:14-CV-02660, 2015 WL 13469909, at *3 (N.D. Tex Nov. 23, 2015) (finding that plaintiff "sufficiently pled damages as a result of breach of contract" where plaintiff alleged "loss of income and profits due to [defendant's] breaches").

understand that this would foster support from Lamplighter to enroll the daughter in the T1 program, Dr. Hill assured Mr. and Mrs. Hardt that they would be offered the opportunity for the Child to re-enroll the following year.  Indeed, Dr. Hill assured Mr. and Mrs. Hardt of the re-enrollment contract on March 6, 2020 (more than a month after the February 1st deadline).  As such, Mr. and Mrs. Hardt's correct understanding that the outside examinations would foster support by Lamplighter were in fact realized and would not have been pursued, at their own expense, otherwise.[107]

Moreover, by informing Mr. and Mrs. Hardt after the February 1st deadline, Mr. and Mrs. Hardt were denied the opportunity to enroll the Child at other independent schools that would have more appropriately accommodated her learning disabilities otherwise because the application deadlines for such other schools had by then passed.  Had Mr. and Mrs. Hardt been informed by February 1st, or before (given that Lamplighter conducted the Gesell test in December 2019), the Child would have had the opportunity to apply to schools that would have provided appropriate accommodations for the Child's learning disabilities.

Additionally, by the time that Mr. and Mrs. Hardt were informed about the decision to not allow the Child to re-enroll, Dr. Hill stated that the Child was too far behind academically and was used to justify Lamplighter's re-enrollment denial.  Had Mr. and Mrs. Hardt been informed of the purported issues earlier, that basis for denying re-enrollment to the Child would have been moot.  Shockingly, the Child was administered the Gesell test by Ms. Schroeter in December of 2019 – almost four months before Lamplighter informed Mr. and Mrs. Hardt that the Child was too far

---

[107] Additionally, for these reasons, Defendant's reference to *Austen v. Weatherford Coll. of Parker County Junior Coll. Dist.*, is inapposite and inapplicable. 4:11-CV-536-A, 2012 WL 3223664, at *7 (N.D. Tex. Aug. 8, 2012), aff'd sub nom. *Austen v. Weatherford Coll.*, 564 Fed. Appx. 89 (5th Cir. 2014).

behind academically.  The money and time that Mr. and Mrs. Hardt spent on testing and evaluating the Child were spent in reliance on Lamplighter's commitments.  Therefore, by informing Mr. and Mrs. Hardt after the February 1st deadline, the Child missed the opportunity to attend the T1 program which is not offered at the Child's new school.  As such, the Child not only lost the opportunity to attend the 7-year program envisioned by Lamplighter that takes the Child through the fourth grade and gives the Child the opportunity to attend other independent schools in Dallas, the Child also lost the ability to attend the T1 program.

**D.   In The Alternative, The Court Should Grant Leave To Plaintiffs Amend Their Claims.**

To the extent that the Court determines that Plaintiffs can state plausible claims against Lamplighter but should include some additional detail in connection with certain elements of those claims, the Court should grant leave to Mr. and Mrs. Hardt to amend their claims because "[l]eave shall be freely given when justice so requires,"[108] and a party should generally be provided with at least one chance to amend before their claims are dismissed with prejudice.[109]  The interests of justice certainly warrant that leave be granted to Mr. and Mrs. Hardt under the circumstances.

**V.**

**CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that that the Court deny Defendant's Motion or, in the alternative, grant them leave to amend, and grant them such other and further relief to which they are justly entitled.

---

[108] See FED. R. CIV. P. 15(a).

[109] See *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Dated:  May 19, 2021                     Respectfully submitted,

                                         **BREWER STOREFRONT, PLLC**


                                         By: */s/ Efrain Vera*_____
                                         William A. Brewer III
                                         State Bar No. 02967035
                                         wab@brewerattorneys.com
                                         Efraín Vera
                                         State Bar No. 24122707
                                         exv@brewerattorneys.com

                                         1717 Main Street
                                         Suite 5900
                                         Dallas, Texas 75201
                                         Telephone:  (214) 653-4000
                                         Facsimile:   (214) 653-1015

                              **ATTORNEYS FOR PLAINTIFFS**

                       <u>**CERTIFICATE OF SERVICE**</u>

On May 19, 2021, I electronically submitted the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


                                         */s/ Efrain Vera*_____
                                         Efrain Vera