**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| JAMES HARDT AND MICHELLE HARDT, INDIVIDUALLY, AND AS NATURAL PARENTS AND NEXT FRIENDS OF L.H., A MINOR, | § § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:21-CV-00780-K |
| v. | § | |
| | § | |
| THE LAMPLIGHER SCHOOL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant The Lamplighter School's ("Lamplighter" or "Defendant") Motion to Dismiss Plaintiffs' Original Complaint for Lack of Subject-Matter Jurisdiction and Failure to State a Claim (Doc. No. 8). The Court has carefully considered the Motion, the Response, the Reply, and the applicable law. Because Plaintiffs have not properly pleaded standing to invoke federal law, the Court GRANTS Defendant's Motion.

I.      **Factual and Procedural Background**

This factual recitation is drawn from Plaintiffs' Original Complaint (Doc. No. 1). For purposes of this motion to dismiss, these allegations are taken as true. The allegations are summarized, identifying the points most relevant for this Memorandum Opinion and Order.

On April 5, 2021, Plaintiffs James Hardt ("Mr. Hardt") and Michelle Hardt ("Mrs. Hardt") (together, "Plaintiffs"), filed this complaint individually, and as natural parents and next friends of their daughter, L.H., a Minor ("Child"). *Id.* Plaintiffs assert claims against Defendant for violation of Title III of the Americans with Disabilities Act (ADA) and for negligence and breach of contract. *Id.* ¶¶ 74-82, 83-90, 91-96.

In 2017, Plaintiffs enrolled their Child in The Lamplighter School's 2017-18 preschool class. *Id.* ¶ 2. The Lamplighter School is an independent, co-educational school whose academic program spans preschool through the fourth grade, with the option of a transitional year between kindergarten and the first grade. *Id.* Upon enrolling their Child at Lamplighter, Plaintiffs signed a contract agreeing to the rules and regulations in the Lamplighter Family Handbook. *Id.* ¶ 15.

According to Plaintiffs, the Child's preschool teacher was informed of her speech articulation and receptive expressive language disorder at the beginning of the 2017-18 academic year, and Plaintiffs contend that they received favorable progress reports throughout that academic year. *Id.* ¶¶ 17-19. Plaintiffs maintain the same for the 2018-19 preschool year, despite the Child's September 2018 strabismus diagnosis—of which the teacher was notified. *Id.* ¶¶ 20-26.

At the beginning of the 2019-20 kindergarten year, Plaintiffs again informed the Child's new teacher of her speech articulation and receptive expressive language disorder. *Id.* ¶ 28. This time, however, Plaintiffs asked if the Child's speech therapist could work with her at school. *Id.* Plaintiffs claim that, notwithstanding an initial

affirmation from the teacher that the Child's speech therapist could work with her at school, Lamplighter ultimately did not permit the speech therapist on campus, citing a contract with a different speech therapy company. *Id.* ¶ 29. With this, Plaintiffs claim that the Child was never afforded access to Lamplighter's in-house speech therapy services, and that her kindergarten teacher was generally unaccommodating despite indications that she needed development with respect to letters and sounds. *Id.* ¶¶ 30-36.

In or around December 2019, Plaintiffs informed Lamplighter of their intention to enroll their Child in the school's transitional first grade program ("T1 Program"). *Id.* ¶¶ 37-40. Plaintiffs met with Lamplighter staff regarding the enrollment for that program on January 15, 2020. *Id.* ¶ 41. Plaintiffs describe the meeting negatively. *See id.* School officials reportedly described to Plaintiffs for the first time that the Child was exhibiting certain developmental and behavioral problems. *Id.* ¶ 42. This was also the first time Plaintiffs were informed that school officials had, approximately one month prior, administered the Gesell test to the Child. *Id.* ¶ 43. Plaintiffs claim that the test—intended to measure the Child's developmental progress—was not administered with proper accommodations, and also that the results seemingly conflicted with other recently administered assessments. *Id.* ¶ 44. At the recommendation of Lamplighter officials, Plaintiffs agreed to have an external evaluation performed on the Child's learning style. *Id.* ¶¶ 46-47.

Fifteen days after the January 2020 meeting, Plaintiffs had the child evaluated by an independent diagnostic specialist who ultimately diagnosed the Child with dyslexia. *Id.* ¶ 48. The diagnostic specialist indicated her belief that the Child would be successful in the T1 Program at Lamplighter if she received dyslexia remediation. *Id.* ¶¶ 49-51. The external diagnostic exam report was submitted to Lamplighter on February 19, 2020. *Id.* ¶ 54.

A second T1 Program enrollment meeting was held on February 21, 2020. *Id.* ¶ 52. In addition to allegations from school officials that the Child was distracting other students in class, Plaintiffs claim that school officials revealed that they conducted another evaluation on the Child in the time between when the external diagnostic exam report was submitted to Lamplighter and this second T1 Program meeting. *Id.* ¶ 54. Those test results reportedly indicated that the Child had a "fragile" reading profile. *Id.* Plaintiffs apparently allege that this evaluation was not conducted with the appropriate accommodations consistent with the Child's diagnoses. *Id.* ¶¶ 54, 69. According to Plaintiffs, the unsatisfactory results of this test were later used by school officials to help justify their recommendation that the Child be denied reenrollment at Lamplighter. *Id.* ¶¶ 54, 58, 69.

On March 6, 2020, Plaintiffs met with Lamplighter's Head of School ("Principal"). *Id.* ¶ 63. There, Plaintiffs shared their plans to remediate the Child's dyslexia. *Id.* ¶ 63. Plaintiffs allege that at the meeting, Lamplighter's Principal stated,

"You have a Lamplighter contract for next year, so don't you worry about that." *Id.* ¶ 65.

The final T1 Program meeting was held on March 10, 2020. *Id.* ¶ 67. Various school officials, including Lamplighter's Principal, attended. *Id.* ¶ 66. Plaintiffs maintain that the Principal concluded, based on the information presented to her in a recent progress report, that the Child was too far behind academically and should therefore not attend Lamplighter for the 2020-21 school year. *Id.* ¶ 67.

## II.     The Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion to Dismiss*

Defendant motions this Court to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted). Doc. No. 8 at 1. First, Defendant claims an issue with jurisdiction, arguing that Plaintiffs lack standing to pursue their ADA claim because they "cannot plausibly establish a real and immediate threat of imminent injury, or that any claimed injury would be redressed by [a] favorable court decision." *Id.* at 4. Defendant also points out that, because Title III of the ADA does not permit monetary damages in private suits, Plaintiffs' ADA claims should be dismissed to the extent they seek monetary damages. *Id.* at 5. Next, Defendant argues Plaintiffs' negligence claim must be dismissed because it is a "mirror image" of their ADA claim, and acts of negligence do not fall under the ambit of the ADA, and for other pleading deficiencies. *Id.* at 6-8. Finally, Defendant argues that

Plaintiffs' breach of contract claim should be dismissed because, among other reasons, the Lamplighter Family Handbook does not create binding legal obligations on Lamplighter. *Id.* at 9-10.

### B. *Plaintiff's Arguments in Opposition to Defendant's Motion to Dismiss*

Plaintiffs maintain they have standing to pursue their ADA claim per the "deterrent effect test." Doc. No. 15 at 11-12. In their opposition response, Plaintiffs raise for the first time that they "would have continued to patronize the school were it not for Lamplighter's refusal to provide reasonable accommodations whether by continuing to enroll the Child." *Id.* at 13. Plaintiffs also dispute Defendant's contentions regarding the pleading deficiencies of the negligence and breach of contract claims. *Id.* at 16-23.

## III.   Legal Standards

### A. *Motion to Dismiss*

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true. *E.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Defendant has asked this Court to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(1) (lack of subject-matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted). "When a Rule 12(b)(1) motion is filed

in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Therefore, the Court will first address the standing argument in Defendant's Rule 12(b)(1) Motion.

Federal courts have subject matter jurisdiction only over a "case" or "controversy." *See* U.S. Const. art. III, § 2, cl. 1. To establish a "case or controversy," a plaintiff must show that it has standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Accordingly, Plaintiffs must establish that (1) they have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," (2) there is a "causal connection between the injury and the conduct complained of," and (3) it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotations and citations omitted).

Plaintiffs attempt to establish federal jurisdiction pursuant to Title III of the ADA, which prescribes that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000., for which there

is only injunctive relief." *Frame v. City of Arlington*, 575 F.3d 432, 438 n.5 (5th Cir. 2009).

At least for the ADA claim, then, Plaintiffs must meet the additional standing requirements for equitable relief. *See Deutsch v. Annis Enters. Inc.*, 882 F.3d 169, 173 (5th Cir. 2018). Thus, Plaintiffs must also show that "there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 102 (1983). Merely having suffered an injury in the past is not enough; Plaintiffs must show a "real or immediate threat that the plaintiff will be wronged again." *Id.* at 11.

### B. Supplemental Jurisdiction

If a court has original jurisdiction over a federal claim pursuant to 28 U.S.C. § 1331, the court also has supplemental jurisdiction over state law claims "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Upon dismissal of the federal claim that served as the basis for original jurisdiction, the district court retains its statutory supplemental jurisdiction over any related state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id.* at 639. However, the "general rule" in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial—but that rule "is neither mandatory nor

absolute." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citations omitted); *see also* 28 U.S.C. § 1367(c) (enumerating circumstances where a district court may refuse to exercise supplemental jurisdiction, including when it has dismissed all claims over which it had original jurisdiction).

The Court's decision to retain supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity." *Batiste*, 179 F.3d at 227. "No single factor" in the supplemental jurisdiction analysis is dispositive. *Id.*

## IV.    Analysis

### A. Standing

Plaintiffs have failed to establish standing to invoke federal jurisdiction for at least two closely-related reasons: Plaintiffs have not demonstrated that the alleged ADA violations threaten the Child with future injury, nor have they shown that the alleged injuries would likely be redressed by a favorable decision.

First, Plaintiffs have failed to demonstrate that the alleged ADA violations threaten the Child with future injury because—so far as currently pleaded—she is not experiencing an ongoing or imminent injury that the Court can enjoin. As mentioned above, the enforcement provisions of Title III of the ADA provide private plaintiffs only with injunctive relief. *See* 42 U.S.C. § 12188(a). And that injunctive relief is only available to "any person who is *being subjected to* discrimination on the basis of disability"

9

or who has "reasonable grounds for believing that such person is *about to be subjected to discrimination.*" 42 U.S.C. § 12188(a)(1) (emphasis added).

Courts have differed in their interpretations of this statute, especially as it applies to architectural barriers. *Compare Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (applying the deterrent effect test), *with Deutsch*, 882 F.3d at 175 (applying the intent to return test and apparently rejecting the deterrent effect test). But Plaintiffs' problem persists regardless of whether the Court applies the "deterrent effect" or "intent to return" test. Despite a cursory and speculative assertion to the contrary (Doc. No. 15 at 13), Plaintiffs have not shown a reasonable likelihood that they would patronize Lamplighter if not for the alleged barriers to be enjoined as required by the deterrent effect test. *See, e.g.*, *Pickern*, 293 F.3d 1136; *Disabled Americans For Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60 (1st Cir. 2005). Naturally, then, Plaintiffs have not shown a specific intent to return as required under the intent to return test. *See Deutsch*, 882 F.3d 169.

The Court offers no opinion as to whether the Child has suffered an injury that will affect her into the future. This is a separate inquiry that may possibly be redressed through a negligence claim, for example—not the type of injunctive relief Plaintiffs seek through the ADA.

Even if Plaintiffs had established that the alleged ADA violations threatened the Child with future injury, they have nevertheless failed to demonstrate that the alleged injuries stemming from the ADA violations would likely be redressed by a favorable

decision granting injunctive relief. Plaintiffs ask this Court to force Defendant to "modify its evaluation process when it evaluates children with learning differences, which can prevent future harm as well as imminent harm to the children who are currently enrolled at Lamplighter[.]" Doc. No. 1 at 28. Plaintiffs also ask for "[a] court monitor of Lamplighter's evaluation activities quarterly for the next five years to prevent the improper evaluation of children[.]" *Id.* The injunctive relief requested would not impact the Child whatsoever. *See Lujan*, 504 U.S. at 573 (plaintiff must demonstrate a "concrete private interest in the outcome of [the] suit" and plaintiff must seek relief that "directly and tangibly benefits him"); *Larson v. Valente*, 456 U.S. 228, 244, n. 15 (1982) (Article III requires a litigant to show that a favorable decision "will relieve a discrete injury to himself"); *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party"). Because a favorable decision granting a court monitor and forcing Defendant to modify its evaluative processes would do nothing to redress Plaintiffs' alleged ADA-related injuries and would seemingly benefit only other children, Plaintiffs fail to meet this standing requirement.

### B.  *Supplemental Jurisdiction Over Plaintiffs' State Law Claims*

Here, to the extent that Plaintiffs allege any claims under state law, the balance of factors weighs towards declining to exercise supplemental jurisdiction. *See, e.g., Briley v. Barreca*, No. CV 20-907, 2021 WL 269767, at *4 (E.D. La. Jan. 27, 2021). Judicial economy is best served by declining to exercise jurisdiction, as this litigation was filed

in this Court on April 5, 2021 and is still at a relatively early stage. Next, the convenience factor weighs in favor of declining to exercise supplemental jurisdiction because the parties will not have to perform any redundant or particularly burdensome work in order to litigate in state court. Third, concerns of federalism and comity also weigh in favor of Plaintiffs' state law claims being litigated in state court, as federal courts are courts of limited jurisdiction, and state courts often have superior familiarity with their jurisdictions' laws. *See id.*; *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 122 n.32 (1984). Last, because neither party would have to repeat the "effort and expense of the discovery process," and the statute of limitations on Plaintiffs' state law claims remains tolled while the case is pending in federal court and for thirty days following dismissal, the fairness factor also weighs in favor of declining to exercise jurisdiction. *See* 28 U.S.C. § 1367(d).

## V.      Conclusion

For the reasons discussed above, Plaintiffs have not properly pleaded standing to invoke federal jurisdiction. Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims for negligence and breach of contract. Therefore, Defendant The Lamplighter School's Motion to Dismiss Plaintiffs' Original Complaint for Lack of Subject-Matter Jurisdiction and Failure to State a Claim is **GRANTED**. The Court **ORDERS** that Plaintiffs' Complaint be **DISMISSED WITHOUT PREJUDICE**. **IT IS FURTHER ORDERED** that within fourteen days from the date of this Order, Plaintiffs may motion this Court for leave to amend their

Original Complaint. If they so choose, Plaintiffs' motion must comply with the applicable Federal Rules of Civil Procedure and the Local Civil Rules, including the requirements that Plaintiffs attach a copy of the proposed amended pleading and confer with opposing counsel.

**SO ORDERED.**

Signed October 14th, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE